**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AUBREY LOCKE, | ) | |
| | ) | **FILED: MARCH 20, 2008** |
| Plaintiff, | ) | Docket No.: 08CV1653    RCC |
| | ) | JUDGE DER-YEGHIAYAN |
| v. | ) | Judge: MAGISTRATE JUDGE NOLAN |
| | ) | |
| TRANSUNION, LLC, a Delaware limited | ) | **JURY TRIAL DEMANDED** |
| liability company, NORTHERN ILLINOIS | ) | |
| GAS COMPANY, an Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, AUBREY LOCKE, by and through his attorneys, Tamari & Blumenthal, LLC, and for his Complaint against Defendants, TRANSUNION, LLC and NORTHERN ILLINOIS GAS COMPANY (collectively, the ''Defendants'' unless otherwise specified herein), states as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action for damages based upon Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. sections 1681 *et seq.* (hereinafter "Fair Credit Reporting Act" or "FCRA"), and of state law obligations brought as supplemental claims.

### PARTIES

2.      Plaintiff, Aubrey Locke (hereinafter "Locke") is an individual residing at 18075 Whitman Lane, Lansing, Illinois 60438.  Plaintiff is a "consumer" as defined by sections 1681 a(c) of the FCRA.

3.      TransUnion LLC, (hereinafter "TransUnion"), is a Delaware limited liability company licensed to do business in the state of Illinois.

4.    TransUnion is a "consumer reporting agency," as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in Section 1681 a(d) of the FCRA, to third parties.

5.    Northern Illinois Gas Company (NICOR) is an Illinois corporation with its principal place of business in Naperville, Illinois.

## JURISDICTION

6.    This Court attains jurisdiction over this action pursuant to the FCRA, 15 U.S.C. Section 1681(p), and the doctrine of pendent jurisdiction.  United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). Venue lies in the Northern District of Illinois, Eastern Division as Plaintiff's claims arose from acts of the Defendants perpetrated therein.

## FACTUAL ALLEGATIONS

7.    Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of the Defendants.

8.    On or about June 2004, Locke vacated the premises located at 1425 Schilling Avenue, Chicago Heights, Illinois 60411 (hereinafter "Chicago Heights property").  At the time Locke vacated his premises, he contacted NICOR to disconnect all services at that property.

9.    On or about August 2004, NICOR sent notice to the Locke family that states "as you requested, your gas service has been turned off."  Attached hereto as Exhibit "A" is the NICOR notice regarding termination of services at the Chicago Heights property dated August 3, 2004.

10.     On or about July 2004, Mr. Locke rented the Chicago Heights property to Ms. Phyllis Pointer and Mr. Lester Turner (hereinafter "tenants"), with the express provision that tenants pay all utilities.   Attached hereto as Exhibit "B" is the lease agreement between Aubrey Locke and Phyllis Pointer dated July 1, 2004.

11.     Consequently, Mr. Locke obtained a Court order regaining possession of the Chicago Heights Property on March 15, 2007.  Attached hereto as Exhibit "C" is the Court Order for Possession dated March 15, 2007.

12.     On or about June 2007, Plaintiff received a bill at his current residence in his wife's name for services provided at the Chicago Heights property in the amount of $2,315.51.   Attached hereto as Exhibit "D" is the NICOR bill received by Plaintiff in June 2007.

13.     As a result, on or about June 11, 2007, Plaintiff sent a letter to NICOR stating that he was not responsible for the bill since those charges were the responsibility of the tenants.   In addition, Plaintiff sent another letter to NICOR stating the same on or about June 15, 2007.   Yet another letter was sent on behalf of Mr. Locke by his then attorney, Ronald D. Babb, on or about June 19, 2007.  Attached hereto as Exhibit "E" are three letters sent by the Plaintiff to NICOR regarding the billing error in June 2007.

14.     Neither Mr. Locke nor his counsel received a response to the letters sent to NICOR in June 2007.

15.     Subsequently, as a result of NICOR's failure to correct Mr. Locke's account, his account was sent to collections.

16.     On or about August 30, 2007 Mr. Locke sent a letter to NCO Financial Systems, Inc. (NICOR's collection agency) stating that the debt was not his and he

attached a letter explaining that the debt belonged to the tenants.  Attached hereto as Exhibit "F" is the letter from Mr. Locke to the collection agency dated August 30, 2007.

17.     Consequently, on or about October 2, 2007, NCO Financial Systems, Inc. sent a letter to Mr. Locke stating that his account was closed in their office and that the collections agency had not reported the account to a credit bureau.  Attached hereto as Exhibit "G" is the letter from the collections agency to Mr. Locke regarding his account dated October 2, 2007.

18.     Nonetheless, as a result of NICOR's failure to properly notate Mr. Locke's account, his account was reported to the credit reporting agencies as being in collections.

19.     Before the NICOR account appeared on Mr. Locke's credit report, his TransUnion credit rating was 705.

20.     On or about June 15, 2007, the NICOR account appeared on Mr. Locke's credit report as an outstanding credit and his TransUnion score fell to 693.

21.     On or about June 15, 2007 Mr. Locke transmitted a request for investigation to TransUnion.  TransUnion verified the credit and did not take any action to make changes or investigate further.  Attached hereto as Exhibit "H" are the documents forwarded to TransUnion on June 15, 2007.

22.     Finally, on or about August 14, 2007 and after the NICOR account was sent to collections, Mr. Locke's credit score plummeted to 620.

23.     On or about November 28, 2007, our offices sent another request for reinvestigation to TransUnion on behalf of Mr. Locke.   As part of the request, we attached supporting documents proving that Mr. Locke was not in possession of the property at the time the charges were incurred, that he was not responsible for those

charges, that NICOR confirmed to Mr. Locke in August 2004, that the account has been deactivated and that Mr. Locke did not regain possession of the Chicago Heights property until March 15, 2007. Attached hereto as Exhibit "I" is the dispute request and supporting documentation submitted on Mr. Locke's behalf on November 28, 2007.

24.     Mr. Locke's dispute with TransUnion was also copied to NICOR, putting the latter on notice of the erroneous entry for a NICOR account that remained on Mr. Locke's credit report (see Exhibit "J").

25.     TransUnion's investigation results, as set out in a letter dated January 9, 2008, state "verified, no change". Attached hereto as Exhibit "K" is the TransUnion response letter and latest TransUnion credit report.

26.     Despite the fact that Mr. Locke had confirmation from NICOR's collection company that as of October 2, 2007, the collections account was closed, the TransUnion credit report still showed the NICOR charge as an "Adverse Account." (see Exhibit "J").

27.     NICOR has simply reverified the erroneous reporting to TransUnion, which in turn kept the information on Mr. Locke's credit report without any further investigation, based on the evidence provided by Mr. Locke.

28.     TransUnion failed in its duties to properly reinvestigate the claims by Plaintiff.

29.     Mr. Locke is a mortgage broker/real estate investor who obtains bank loans and lines of mortgage on a regular basis. Consequently, Mr. Locke's credit rating and his ability to obtain loans have suffered tremendously.

30.    As a result of the derogatory information reported by NICOR, Plaintiff abstained from applying for credit, had adverse action taken on existing credit accounts and was only able to obtain credit at higher interest rates. Plaintiff has sustained actual damages, including pecuniary loss.

### Count I
### Violation of the Fair Credit Reporting Act
### Against TransUnion LLC

31.    Plaintiff realleges and incorporates by reference paragraphs 1 to 30 of this complaint as though fully set forth herein.

32.    At all times relevant herein 15 U.S.C. §1681 et seq. was in full force and effect.

33.    In this action, Defendant, TransUnion, issued, assembled, transferred and otherwise reproduced multiple "consumer reports" regarding Plaintiff, as defined in the Fair Credit Reporting Act.

34.    From June 2007 through the present time period, Defendant TransUnion has continually added, stored, maintained and disseminated personal and credit information about the Plaintiff which is false, erroneous and misleading without employing procedures to ensure the maximum possible accuracy of the information disseminated.

35.    Defendant TransUnion failed to employ reasonable procedures to timely and properly investigate the accuracy of the negative credit entries upon being notified of Plaintiff's objection to such entries and Plaintiff's request that such information be deleted.

36.     Defendant TransUnion failed to employ reasonable procedures to timely and properly reinvestigate the negative credit entries on Plaintiff's credit report after being notified by Plaintiff that negative and false entries remained on Plaintiff's credit report.

37.     Defendant TransUnion failed to properly and timely delete the negative credit entry after Mr. Locke provided sufficient proof that the NICOR account did not belong to him.

38.     Defendant TransUnion, through its action and inaction and in violation of the Fair Credit Reporting Act, caused great and irreparable injury to Plaintiff by willfully and/or negligently violating the provisions of the FCRA in the following respects:

a.  Willfully and/or negligently failing, in the preparation of the consumer reports concerning plaintiff, to follow reasonable procedures to assure maximum possible accuracy of the information in the reports;

b.  Willfully and/or negligently failing to comport with FCRA section 1681i;

c.  Defaming plaintiff by publishing to third parties false information regarding his creditworthiness;

d.  Invading the privacy of plaintiff;

e.  Failing in its duty to prevent foreseeable injury to plaintiff.

**Count II**
**Violation of the Fair Credit Reporting Act**
**Against Northern Illinois Gas Company**

39.     Plaintiff realleges and incorporates by reference paragraphs 1 to 30 of this complaint as though fully set forth herein.

40.     At all times relevant herein 15 U.S.C. §1681 et seq. was in full force and effect.

41.     Once Plaintiff became aware of the outstanding NICOR balance on the Chicago Heights Property, the Plaintiff immediately notified Defendant NICOR of the billing and credit reporting errors arising out of the Chicago Heights Property. , However, NICOR failed to take reasonable actions to rectify the erroneous charges and remove the false information from Plaintiff's credit report.

42.     Particularly, Defendant NICOR failed to timely investigate the erroneous charges, delete the false information from its own records and notify the various consumer credit reporting agencies of the erroneous and false information previously disseminated.

43.     Defendant NICOR, with reckless disregard for the truth; furnished, continually disseminated and issued consumer information bearing on Plaintiff's creditworthiness to various credit reporting agencies and other entities which contained erroneous, inaccurate and false information about the Plaintiff.

44.     Defendant NICOR failed to properly and timely reinvestigate the information it disseminated despite the notification received from Plaintiff.

45.     NICOR has willfully and/or negligently violated the provisions of the FCRA in the following respects:

a.  Willfully and/or negligently failing to comport with FCRA section 1681s-2(b);

b.  Defaming plaintiff by publishing to third parties information regarding his creditworthiness;

c.   Invading the privacy of Plaintiff;

d.   Committing unfair and deceptive acts against Plaintiff in the course if its business in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1;

e.   Failing its duty to prevent foreseeable injury to Plaintiff.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff prays that the Court grant the following relief as against Defendants:

a.   Actual damages;

b.   Punitive damages;

c.   Attorney's fees; and

d.   Costs.

Respectfully Submitted,

_Walid Joseph Tamari_

_____

Attorneys for AUBREY LOCKE

File No: 22-105
Walid Joseph Tamari
Tamari & Blumenthal, LLC
55 W. Monroe St., Suite 2370
Chicago, Illinois 60603
Telephone: (312) 236-6200
Fax: (312) 416-7963
ARDC: 6270706

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# A

# nicor
## 1 888 NICOR 4U
### ( 6 4 2 - 6 7 4 8 )

Nicor Gas
P.O. Box 2020
Aurora, IL 60507-2020
www.nicorgas.com

PAMELA J LOCKE AUBREY D LOCKE          Account:
Meter Number 28x8349
Residential-Space Heat

**Before digging on your property, call JULIE at 1 800 892-0123. JULIE notifies Nicor Gas and other utilities so we can mark the location of underground facilities.**

(Page 2 of 2 )

As you requested, your gas service has been turned off. We appreciate the opportunity to have provided you with natural gas service and look forward to serving you again in the future. Just a reminder that if you or your family request service for this address within the next 12 months, you will be billed a Monthly Customer Charge for the time your service was off plus a reconnection charge.

Nicor Services Company is increasing your charge for Gas Line ComfortGuard coverage to $3.95 per month. The change will take effect beginning with the October 2004 gas bill. For information call 1-888-864-4141

**Total Amount Due**                                    **$55.64**
Date of Issue August 3, 2004



08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# B

# APARTMENT LEASE

HEATED, NOT FURNISHED

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT* |
|---|---|---|---|---|
| | BEGINNING | ENDING | | |
| Aug 1, 2005 | August 1, 2005 | July 31, 2006 | $900 | $1800 — |

*"IF NONE, WRITE "NONE". Paragraph 2 of Lease Agreements and Covenants then INAPPLICABLE.*

TENANT

TENANT · Phyllis Powder

APARTMENT · 1425 Schilling Ave

BUILDING · Chicago Hts, IL · 60911

CITY

OWNER · Aubrey D. Locke
· 18075 Winterman Lane
· Lansing, IL · 60438

In consideration of the mutual agreements and covenants set forth below (the same being fully included as part of this Lease) OWNER hereby leases to TENANT and TENANT hereby leases from OWNER for a private dwelling the Apartment designated above, together with the fixtures and accessories belonging thereto, for the above Term. All parties listed above as OWNER and TENANT are herein referred to individually and collectively as OWNER and TENANT respectively.

ADDITIONAL AGREEMENTS AND COVENANTS (if any)

Tenant pays all utilities, Landlord pays taxes
& insurance

TENANT(S)    SIGNATURES    OWNER(S)

_Phyllis Painter_ (SEAL)    _Aubrey D. Locke_ (SEAL)

(SEAL)    (SEAL)

## LEASE AGREEMENTS AND COVENANTS

**RENT**

1. TENANT shall on the first day of each month pay to OWNER or OWNER's agent (if Lease executed by agent) in advance the rent set forth above at the address set forth above (or such other address as OWNER may designate in writing). The time of each and every payment of rent is of the essence of the Lease.

**SECURITY DEPOSIT**

2. TENANT has deposited with OWNER the security deposit set forth above for the performance of each and every covenant and agreement of this Lease. OWNER shall have the right, but not the obligation, to apply the security deposit in whole or in part in payment of any unpaid rent or other amount due because of an unperformed covenant or agreement by TENANT; OWNER's right in possession of the premises for nonpayment of rent or for any other reason shall not be affected by the fact that OWNER holds security. TENANT's liability is not limited to the amount of the security deposit. On termination of the Lease and full payment of all amount due and performance of all TENANT's covenants and agreements including surrender of Apartment in accordance with paragraph 12), the security deposit or any portion thereof remaining unapplied shall be returned without interest to TENANT.

**FALSE APPLICATION**

3. The application for this Lease and all representations and promises contained therein are hereby made a part of this Lease. TENANT warrants that the information given by TENANT in the application is true. If such information is false, OWNER may at OWNER's option terminate this Lease.

**CONDITION OF APARTMENT, UPKEEP**

4. TENANT has examined the Apartment and acknowledges that, except for the work OWNER has agreed to do in the application or otherwise in writing, TENANT is satisfied with the present physical condition of the Apartment and that neither OWNER nor OWNER's agent have made any representations or promises concerning the physical condition except those specifically set forth in this Lease. Upon reasonable notice from TENANT, OWNER shall keep in repair the following property: (a) OWNER's own, air conditioning units and dishwasher; (b) The plumbing and electrical pipes, wiring and related facilities; and (c) The floor, interior and exterior walls, supports, ceiling and roof. The failure to keep any of the foregoing in repair shall not affect the obligation of TENANT to pay rent, and TENANT's sole remedy therefor shall be recovery of damages from OWNER. In the event any repair or replacement is necessitated by negligence or willful act of TENANT, TENANT shall on demand reimburse OWNER for the cost thereof. TENANT shall comply with all responsibilities imposed on tenant by the applicable Municipal Code and other regulations. TENANT shall not suffer or commit any waste in and about the Apartment or the Building and shall at TENANT's expense keep the Apartment in good order and repair (except to the extent OWNER is obligated to make repairs). On termination of the Lease TENANT shall return the Apartment to OWNER in the condition, reasonable wear excepted. If TENANT fails to keep the Apartment in such condition and repair, OWNER or OWNER's agent may enter and put the Apartment in good condition and repair. On demand TENANT shall pay OWNER the cost of such work.

**USE OF APARTMENT**

5. The Apartment shall be occupied solely for residence purposes by TENANT, those other persons listed in the application for this Lease, and any children which may be born to or legally adopted by TENANT during the Term. Neither TENANT nor any of these persons shall perform or permit any practice that may damage the reputation of or otherwise be injurious to the Building or the neighborhood, or be disturbing to other tenants or increase the rate of insurance on the Building.

**ASSIGNMENT, SUBLETTING, ABANDONMENT, RELETTING, TERMINATION, RIGHT OF POSSESSION, RE-ENTRY**

6. TENANT shall neither sublet the Apartment or any part thereof nor assign this Lease nor permit by any act or default of himself or any transfer of TENANT's interest by operation of law, nor alter the Apartment or any part thereof for lease or sublease without, in each case, the written consent of OWNER. If TENANT vacates or abandons the Apartment, (or, (10) days non-occupation being deemed an abandonment, or breaches any covenant or agreement in this Lease, TENANT's right to possession of the Apartment shall immediately terminate. The mere retention of possession the earlier by TENANT shall constitute a forcible detainer and if OWNER so elects, but not otherwise, this Lease shall the upon termination, but this Lease shall subsequently terminate without need of an election by OWNER on any transfer of TENANT's interest by operation of law such as TENANT's bankruptcy or insolvency. In any such event the Apartment or any part of it may be relet by OWNER for such rent and such terms and such period as OWNER may elect without releasing TENANT from any liability under this Lease. On such termination TENANT shall surrender possession of the Apartment immediately and OWNER or OWNER's agent shall have full and free license, with or without process of law, to enter and take possession of the Apartment and expel and remove TENANT or any other person who may be occupying the Apartment and to repossess himself of the Apartment as of his former estate. Such entry by OWNER or OWNER's agent shall not constitute trespass or forcible entry and shall not cause a forfeiture of rents due by virtue thereof nor a waiver of TENANT's covenants or agreements in this Lease. OWNER may for any reason reject any prospective new tenants offered by TENANT or by others. OWNER may let other vacancies in the Building first before reletting or attempting to relet the Apartment. TENANT shall on demand pay all deficiencies if the rent on reletting is not sufficient to satisfy the rent provided in this Lease and in addition shall pay all expenses of reletting, including decorating, repairs, replacements and brokerage commissions at rates recommended by the Chicago Real Estate Board.

**ALTERATIONS, ADDITIONS, FIXTURES, APPLIANCES**

7. TENANT shall make no alterations or additions nor install nor maintain in the Apartment or any part of the Building, interior or exterior, major appliances or devices of any kind without in each case the written consent of OWNER and on the same and conditions specified in such written consent. All alterations, additions and fixtures (including locks and bolts) shall remain as part of the Apartment unless OWNER otherwise elects.

**ACCESS**

8. OWNER, OWNER's agents and any other person authorized by the same shall at any time have the right of free access during the Term to inspect, repair, alter or exhibit the Apartment for sale, and at any time within ninety (90) days prior to the end of the Term to exhibit the Apartment for rent and to affix "For Rent" signs in such places as OWNER or OWNER's agent shall determine, all without interference of any kind and regardless of consent by TENANT or others. TENANT shall pay OWNER one (1) month's rent as liquidated damages for each interference with the rights set forth in this paragraph.

| | |
|---|---|
| HEATING AND WATER | 9. OWNER shall furnish to and for the use of TENANT, in fixtures provided for such purpose by OWNER and no other fixtures, hot and cold water during the Term and, in radiators or other heating fixtures in the Apartment, a reasonable amount of heat at reasonable hours from September 15 to June 1, as required by the applicable Municipal Code, except when prevented by causes beyond the control or prevention of OWNER, or except during the repair of the apparatus provided in the Building for the furnishing of water and heat. |
| FIRE AND CASUALTY | 10. If the Apartment becomes untenantable by reason of fire, explosion or other casualty, OWNER may at his option terminate this Lease or repair the Apartment within one hundred twenty (120) days. If OWNER does not repair the Apartment, within this time, or if the Building is totally destroyed, the Term hereby created shall cease and determine. If OWNER elects to repair the Apartment, the rent shall be abated and prorated from the date of the fire, explosion or other casualty to the date of reoccupancy and during repairs TENANT has vacated the Apartment and removed TENANT'S possessions if required by OWNER. The date of reoccupancy shall be the date of notice to TENANT that the Apartment is ready for reoccupancy. |
| EMINANT DOMAIN | 11. If the whole or any substantial part of the Building is taken or condemned by any competent authority for any public use or purpose, the Term of this Lease shall end upon, and not before, the date when possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. Current rent shall be apportioned as of the date of such termination. |
| SURRENDER OF APARTMENT | 12. At the termination of this Lease by lapse of time or otherwise, TENANT shall yield up immediate possession to OWNER and shall deliver all keys to OWNER or OWNER'S agent at the place where rent is payable. If TENANT fails to so do, TENANT for each day TENANT continues to occupy the Apartment pay as liquidated damages a sum equal to the monthly rent provided for in this Lease divided by five (5). |
| WAIVERS BY TENANT | 13. (a) TENANT'S obligation to pay rent during the Term or any extension thereof or any holdover tenancy shall not be waived, released or terminated nor shall the right and power to confess judgment pursuant to paragraph 17 hereof be waived or terminated by the service of any 5-day notice, demand for possession, notice of termination of tenancy, institution of any action of forcible detainer, ejectment or for any judgment for possession, or any other act or acts resulting in termination of TENANT'S right of possession. |
| | (b) The payment or receipt of rent due shall not waive or affect any such notice, demand, suit or judgment or in any manner waive, affect, change, modify or alter OWNER'S rights or remedies. |
| | (c) The acceptance of liquidated damages pursuant to paragraph 12 shall not be a waiver by OWNER of the right of re-entry, nor shall any other act in the apparent affirmance of the tenancy at the termination of this Lease operate as a waiver of the right to terminate this Lease or operate as an extension thereof, nor shall the provisions of paragraph 12 affect OWNER'S right, at his election, to treat TENANT as a holdover tenant under the terms of this Lease. |
| | (d) TENANT hereby waives any and all notices, elections, demands and options whatsoever by or from OWNER whether or not provided for by Illinois statute, except only if waiver is specifically prohibited by statute. |
| | (e) The acceptance by OWNER of rent after it falls due or after knowledge of any breach of this Lease by TENANT, or the giving of any notice or making of any demand or any waiver by OWNER other than a specific written waiver or election, shall not be construed as a waiver of any rights of OWNER under this Lease or as an election not to proceed under provisions of this Lease. |
| | (f) OWNER'S rights and remedies under this Lease are cumulative. The use of one or more thereof shall not exclude or waive any other right or remedy. |
| | (g) Except only as otherwise specifically provided by Illinois statute, neither OWNER nor OWNER'S agents shall be liable for damages to TENANT or to any persons claiming through TENANT (nor shall rent be abated) for damage to or loss of property wherever located from any cause whatever. |
| | (h) TENANT'S rights under this Lease and any extensions thereof shall be and are subordinated at all times to any present or future mortgages on the real estate (or any part of it) on which the Building is situated and to all advances upon the security of such mortgages. TENANT shall execute any further instruments required by OWNER to affect such subordination and hereby irrevocably appoints OWNER (and, if more than one person's name appears as OWNER, any one of them) as attorney-in-fact to execute and deliver such instruments in TENANT'S name. |
| LEGAL EXPENSES | 14. TENANT shall pay OWNER all OWNER'S costs, expenses and attorneys' fees in and about the enforcement of covenants and agreements of this Lease. |
| RULES AND REGULATIONS | 15. The rules and regulations at the end of this Lease shall be a part of this Lease. TENANT covenants and agrees to keep and observe these rules and regulations. TENANT also covenants and agrees to keep and observe such further reasonable rules and regulations as may later be required by OWNER or OWNER'S agent for the necessary, proper and orderly care of the Building. |
| BINDING ON HEIRS, ETC. | 16. All covenants and agreements on this Lease shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and assigns of OWNER and TENANT, subject to the restrictions set forth in paragraph 6 hereof. |
| CONFESSION OF JUDGMENT | 17. TENANT (and if more than one person) jointly and severally) irrevocably authorize any attorney of any court of record in any State of the United States from time to time to appear for TENANT (and each of them) in such court, to waive process, service and trial by jury, to confess judgment in favor of OWNER, OWNER'S heirs, executors, administrators, successor or assigns and against TENANT (and each of them) for any rent and interest due hereunder from TENANT to OWNER and for OWNER'S costs and reasonable attorney's fees, to waive and release all errors in such proceedings and all right of appeal and to consent to an immediate execution upon the judgment. |

## RULES AND REGULATIONS

These rules are for the mutual benefit of all tenants. Please cooperate. Violations may cause termination of your Lease.

1. No tenant without written consent of OWNER or OWNER'S agent (which may be refused at any time) shall sublet without such written consent any part or the whole Apartment.

2. Property, public halls, stairways, landings, elevators and similar conduits shall not be obstructed or be used for any children's play or for any other purpose than for ingress to and egress from the building or apartment, nor shall children be permitted to congregate or play in or around the building. All personal possessions must be kept in the Apartment or in basement locker if provided.

3. All furniture, supplies, goods, packages of every kind shall be delivered through the rear or service entrance, stairway or elevator.

4. Curtains, Venetian or Venetian blinds are uniform shall be required on the inside, public halls, or stairways, court or elevators in the building but are to be placed in every instance to the main interior by the OWNER or OWNER'S agent.

5. Laundry and drying apparatus shall be used in such, a manner and at such times as designated by the OWNER'S agent. Newspapers and rubbish cannot be left in the Apartment.

6. The use of garbage receptacles or incinerators shall be in accordance with posted signs and only garbage not relied wrapped in small tight joints may be placed in garbage receptacles or incinerators; nothing else shall be placed in garbage receptacles or dropped into the incinerator.

7. No sign, signal, illumination, advertisement, notice or any other lettering or ornament shall be exhibited, inscribed, painted, affixed or exposed on or at any window or on any part of the building or inside of the Apartment or in the building window in a way where written consent of the OWNER or OWNER'S agent.

8. No awnings or other projections including air conditioners, radiators or radio antennas or wiring shall be attached to or extended from the outside walls of the Building.

9. The TENANT shall not alter any lock or install a new lock or knocker or other attachment on any door of the Apartment without the written consent of the OWNER or the OWNER'S agent.

10. No water receptacles, supplies, footwear, umbrellas or other articles shall be placed in the halls, on the stairway landings, nor shall anything be hung, or shaken from the windows or balconies or placed upon the outside window sills.

11. No radio, music or other sound shall be permitted at any time in such manner as to disturb or annoy other occupants of the Building.

12. The water closets, basins and other plumbing fixtures shall not be used for any purpose other than for those for which they were intended, and sweepings, rubbish, rags or any other improper articles shall not be thrown into them. Any expense caused by such misuse to be paid for by the TENANT.

13. No radios, horns or music shall be driven into the walls or woodwork of the Apartment without first obtaining the written consent of the OWNER or the OWNER'S agent.

14. There shall be no cooking or kitchen done in or about the Apartment except in the kitchen. Cooking or keeping of roomers or other similar subtenant as a parcel of subkeep is expressly forbidden.

ASSIGNMENT BY OWNER

On this _____ 19____, for value received, OWNER hereby transfers, assigns and sets over the _____ all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to _____ 19____.

_____ (SEAL)

_____ (SEAL)

GUARANTEE

On this _____ 19____, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by TENANT, TENANT'S heirs, executors, administrators, successors or assigns of all covenants and agreements of the above Lease.

_____ (SEAL)

_____ (SEAL)

NOTE: Use Form Number 12-1B for assignment by TENANT.

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# C

TO:13128932266                      P.9/45

Order for Possession                                    CCM-N114-15M-2/28/05 (43480658)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT / 6th DISTRICT

Aubrey D. Locke

v.                          Plaintiff(s)

}     No. 06 M6 6309

Phyllis Pointer & Any & All
Occupants                   Defendant(s)

AGREED        ORDER FOR POSSESSION

This cause coming on to be heard upon the complaint of the Plaintiff(s), _Aubrey D Locke_

_____, and the issues thereof having been heard and

determined by ___the Court___ and said ___Court___ having found that the
                    (court) (jury)              (court) (jury)

Plaintiff(s) _Aubrey D Locke_ is/are entitled to the possession of
the premises described herein.

IT IS THEREFORE ORDERED AND ADJUDGED:

1. That the Plaintiff(s) have and recover of and from the Defendant(s), _Phyllis Pointer_

_Any & All Occupants_, the possession of the following described premises:

Name: _Phyllis Pointer & Any & All Occupants_

Address: _1425 Schilling Ave_

Floor – Apt No. _____

City – State – Zip: _Chicago Heights Il 60411_

2. That the Plaintiff(s) have and recover of and from the Defendant(s), _Phyllis Pointer_
the sum of _POSSESSION ONLY – protest_____ dollars and costs

3. Enforcement of this judgment is stayed until _INSTANTER_   (40)        279.80
                                                              (date)

I hereby certify the above to be correct.

Dated: _____

(Seal of Clerk of Circuit Court)          This order is the command of the Circuit Court and
                                          violation thereof is subject to the penalty of law.

Clerk of the Circuit Court of Cook County, Illinois

Atty. No.: _32694_

Atty. Name: _Ronald D. _____

Atty. for Plaintiff (or) Pro Se Plaintiff:

Address: _12757 S _____ #_

City/State/Zip: _Blue Island Il 60406_            Judge                    Judge's No.

Telephone: _(708) 388-7783_

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

COPY 2 - FILE WITH SHERIFF'S OFFICE

ENTERED
JUDGE FRANK CASTIGLIONE-1675
MAR 15 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT
# D

# nicor

1 888 NICOR 4U    1 888 642-6748

**Service For:**
Pamela J Locke

## Energy Profile

**Average Daily Cost**
2007    $15.43
2006    N/A

**Average Daily Therms**
2007    17.23
2006    N/A

**Total Degree Days**
2007    4,381
2006    4,183

Visit the "My
Account" section of
nicorgas.com where
you can conveniently:

• Pay your bill
• Sign up for email
reminders, Auto
Payment and Budget
Plan
• Make payment
arrangements
• Submit a meter read
• View your gas use
history

For gas service at the following location:
1425 Schilling Ave, Chicago Heights

**Meter Reading Meter Number 20683369**
Current    4116  Actual Final Reading  May 2, 2007
Previous    1291  Estimated Reading  December 4, 2006
Difference    2841 (149 days)
Conversion to Therms: 2841 X 1.003 BTU Factor = 2560.10 Therms

### Residential Gas Heat Service - Dec 04, 2006 - Dec 31, 2006

**Delivery Charges**
Monthly Customer Charge                          8.26
First 20.3 Therms    18.62 @ $0.1585           3.21
21 - 50 Therms    28 @ $0.0663                 1.86
Over 50 Therms    433.71 @ $0.0519            22.63
Environmental Cost Recovery 467.38 @ $0.0031    1.98
                                                              $35.62

**Natural Gas Cost**
482.38 Therms x $0.67                          335.19
                                                              $323.19

**Taxes**
Municipal Utility Tax $360.81 @ $.5184         18.88
Utility Fund Tax $360.81 @ 0.1%                 .36
State Revenue Tax 482.38 @ $0.024              11.58
                                                              $30.82
                                                                        $391.33

### Residential Gas Heat Service - Jan 01, 2007 - May 02, 2007

**Delivery Charges**
Monthly Customer Charge                         43.99
First 20 Therms    81.31 @ $0.1473            11.98
21 - 50 Therms    122 @ $0.0539                7.06
Over 50 Therms    1,893.45 @ $0.0518          98.53
Environmental Cost Recovery 1,549.5 @ $0.0035   5.43
Environmental Cost Recovery 551.79 @ $0.0036    1.98
County Government Agency Compensation Adjustment (for    .33
172 of 30 days)
Franchise Cost Adjustment (for 172 of 30 days)   1.03
                                                              $162.93

**Natural Gas Cost**
534.06 Therms x $0.67                          357.82
482.38 Therms x $0.72                          347.31
534.06 Therms x $0.83                          443.27
518.83 Therms x $0.85                          439.31
34.46 Therms x $0.86                            29.64
                                                              $1,617.35

---

Please detach and return with your payment



**Due by 6/27/07**
**$2,315.51**

Current bill $2315.51 due by 06/27/2007

Pamela J Locke
18075 Whitman Ln
Lansing IL 60438

Indicate amount added for Sharing:
$ _____

PO BOX 416
AURORA IL 60568-0001

99 90 24 1495 4 0002315513 0002315513 9

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT E

June 11, 2007

Dear Sir/Madam:

I'm writing ~~~~~ you in regards to your Nicor Gas bill, account ▓▓▓▓▓▓▓▓▓▓ for $2,315.51 for address 1425 Schilling Ave in Chicago Heights. I presently reside at 18075 Whitman Lane in Lansing Il. since June 2004 with account ▓▓▓▓▓▓▓ (see enclosure). I have never used or am responsible for any gas use at 1425 Schilling Ave in Chicago Heights since June 2004 when I requested service to be discontinued in my name. It was confirmed by you that you had done so in June 2004. I am not on file nor have I lived at 1425 Schilling Ave in Chicago Heights since June 2004. The new tenants, Phyllis Pointer AND Lester Turner have resided there as section 8 tenants since July 2004 (see lease enclosures). Enclosed leases clearly show that these tenants were responsible for all utilities including gas bills.

   I find it appalling that you would send me this bill for gas I did not use or surely did not authorize with no real justification to do so. Trying to resolve it with your operators by phone is even more frustrating, with them refusing to give me any addresses to come in and resolve this matter. Not only will I defend my reputation by disputing this bill with the credit bureaus, but will most assuredly file any legal action necessary against Nicor Gas to have you correct this unjustified attack, and

blatant attempt on trying to ruin my good name. I am hereby requesting that you take this bill out of my name as I am officially disputing these charges. You need to track down the people who have sole responsibility to you, namely Phyllis Pointer & Lester Turner, for payment. I hope to hear favorably from you soon.

Yours truly,
Pamela J Locke

June 15 2007

Dear Sir/Madam

I'm writing you in regards to your Nicor Gas bill account ████████ for $2315.51 for address 1425 Schilling Ave in Chicago Heights, I. I presently reside at 18075 Whitman Lane in Lansing IL since June 2004. I have never used or am responsible for any gas use at 1425 Schilling Ave in Chicago Heights since June 2004. The new tenants, Phyllis Pointer AND Lester Turner have resided there as section 8 tenants since July 2004 (see lease enclosures). Enclosed leases clearly show that these tenants were responsible for all utilities including gas bills.

How dare you Nicor Gas put this bill on my credit report, thereby pulling down my score with trans union and lowering my overall fico score (see enclosure) with no real justification to do so. Not only will I defend my reputation by disputing this bill with the credit bureas but will most assuredly file any legal action necessary against Nicor

GAS
cont'd

to have you correct this unjustified attack and blatant unwarranted attempt at trying to ruin my good name. I did not use or surely did not authorize any gas use during the period of said bill. Please be advised that you have already caused damage to my overall fico score for which I am holding you liable. I demand that you take this bill off and totally delete it from my credit report as I am officially disputing these charges Please send confirmation that you have done so to:

Aubrey D. Locke
18075 Whitman Lane
Lansing, IL. 60438

Thanks in advance for your co-operation.

Yours truly,
Aubrey D. Locke

THE LAW FIRM OF

# RONALD D. BABB, LTD.

RONALD D. BABB



PLEASE REPLY TO:
717 S. Western Avenue, Suite #207
Blue Island, Illinois 60406
9/488-5920
FAX: 708/389-9620

June 19, 2007

Nicor Gas
P.O. Box 190
Aurora, Illinois 60507

Re: Account ████████████

To Whom It May Concern:

Please be advised that our firm has been retained by Aubrey and Pamela Locke with regard to the above referenced account number.

Please also be advised that my clients are disputing the validity of this debt. My clients do not live at 1425 Schilling Ave., Chicago Heights, Illinois and have not authorized gas service at that location. My clients have been actively disputing this debt with no response from your company. Additionally it has been brought to our attention that the party responsible for the bill, Lester Turner, has also been billed for the current outstanding bill of $2,315.51. In spite of my clients notifications to you, you still reported this as their debt to the credit bureau.

It is our hope that no legal action will be necessary in this matter. We ask that you send my clients notification that you are no longer holding them responsible for this bill. Also, please forward me, and my clients a copy of your notice to this credit bureau(s) correcting this error.

Very truly yours,

RONALD D. BABB, LTD.

Ronald D. Babb
Attorney at Law

RDB/jb

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT
# F

8/30/27

Re: Acct # ████████

Dear Sir/Madam:

I am disputing this debt. In accordance with federal law I Need verification from your client as to the validity of this debt. This is a blatant unwarranted attempt by your client to ruin my good name as I did not use or surely did not authorize the use of gas from your client. I again am disputing this debt. Legal action is already in the process of being filed against Nicor Gas for the damage already done to my credit. My overall fico score has been damaged and I am holding your client, Nicor Gas liable. I demand that you take this bill off and totally delete it from my credit report as I am officially disputing these charges.

Yours truly,
Aubrey D. Jocke

P O BOX 15630
DEPT 99
WILMINGTON DE 19850

# NCO FINANCIAL SYSTEMS INC

507 Prudential Road, Horsham, PA 19044

800-621-7195
OFFICE HOURS
8AM-9PM MON THRU THURSDAY
8AM-5PM FRIDAY
8AM-12PM SATURDAY
Aug 25, 2007

AUBREY D LOCKE
18075 WHITMAN LN
LANSING IL  60438-1529

| | Account # | Principal | Interest | Int Rate | | Col Bal | Other | Bal Amt |
|---|---|---|---|---|---|---|---|---|
| | | 2315.51 | | | | | | |

Dear AUBREY D LOCKE,

You have not responded to our letter(s) regarding the above account. We are sure you have a reason for not resolving this matter. However, we have no way of knowing unless you advise us.
Please complete the information below and mail it to us.
1) I can pay $ _____ per month starting _____
2) I haven't paid because _this is Not my DEBT._

You may also make payment by visiting us online at www.ncofinancial.com. Your unique registration code is C3V7X5Q9-9BJ4CZL.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

- - - - - - - - - - - - PLEASE RETURN THIS PORTION WITH YOUR PAYMENT (MAKE SURE ADDRESS SHOWS THROUGH WINDOW) - - - - - - -

| Account # | Due Date | Total Balance |
|---|---|---|
| | | $ 2315.51 |

AUBREY D LOCKE

Payment Amount

$

Check here if your address or phone number has changed and provide the new information below.

Make Payment To:

NCO FINANCIAL SYSTEMS
PO BOX 15740
WILMINGTON, DE 19850-5740

NCO J
1217

0199003V7X5Q00000000010000000002315518

··· 18173G8,11-0023
P.O. Box 2000
Chester, PA 19022

01/09/2008    TransUnion.



P0FK2Q00301635 l027295
AUBREY D. LOCKE
18075 WHITMAN LN
LANSING, Il 60438

ldlalluuduldldalualdldulallalualuldldldl

Our investigation of the dispute you recently submitted is now complete. The results are listed below.

If our investigation has not resolved your dispute, you may add a 100-word statement to your report. If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to TransUnion including this information in every credit report we issue about you.

If there has been a change to your credit history resulting from our investigation, or if you add a consumer statement, you may request that TransUnion send an updated report to those who received your report within the last two years for employment purposes, or within the last one year for any other purpose.

If interested, you may also request a description of how the investigation was conducted along with the business name, address and telephone number of any company we may have contacted for information.

Thank you for helping ensure the accuracy of your credit information.

## Investigation Results

| ITEM | DESCRIPTION | RESULTS |
|------|-------------|---------|
| NICOR GAS | ████████ | VERIFIED, NO CHANGE |

Any corrections to your identification requested by you have been made, and are included in the following credit report.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

NCO Financial Systems Inc
507 Prudential Road
Horsham, PA 19044

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7005 1160 0002 7959 3960

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# G



**NCO**™

NCO Financial Systems, Inc.

507 Prudential Road
Horsham, PA 19044
1-866-305-9426
Office Hours: 8:00 a.m. - 9:00 p.m. Monday through Thursday,
8:00 a.m. - 5:00 p.m. Friday, 8:00 a.m. - 12:00 noon Saturday

October 2, 2007

Aubrey D. Locke
18075 Whitman Lane
Lansing, IL 60438

Re:  Our Reference No(s).          Creditor(s)
     ████████████              Nicor Gas 1844
                              Ferry Road, Naperville, IL 60563
                              Account No.████████████

Dear Aubrey D. Locke:

Thank you for your inquiry regarding the above-referenced account. Please be advised that the above-referenced account is closed in our office. Further inquiry regarding the underlying debt may be directed to Nicor Gas.

According to our files, we have not reported the above-referenced account to a credit bureau. Please be advised that NCO Financial Systems, Inc. cannot effect a change to how any other company or entity may have listed the account on your credit profile.

We appreciate the opportunity to respond to your inquiry.

Very truly yours,

Jamal Hutchinson
Incoming Data Management

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Calls to or from NCO Financial Systems, Inc. may be monitored or recorded for quality assurance.

JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# H

Exhibit H

## Request for Investigation

**Your options for requesting an investigation**
- Initiate an investigation at www.transunion.com/investigate or
- Complete and return this form to the address at the end of this form

**Once you submit your dispute:**
- TransUnion will contact the company that provided the information (lender or public record source) with a request to verify the accuracy of the information.
- The company will then advise TransUnion whether any changes should be made to the information.
- Upon conclusion, usually within 30 days of the date we receive your request, a report reflecting the results of the investigation will be mailed to you via first-class U.S. mail. Please allow 3-5 business days for mail delivery following the completion of our investigation.

**Step 1 - Enter Personal Information**
Please enter the following required information:

Aubrey D. Locke
**Name** _____ **File Number (FIN)** _____

**Other Name(s)**

18075 Whitman Lane
**Address**

Lansing   IL   60438

(708) 439-3632   South Holland Mortgage
**Telephone Number(s)**          **Employer**

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
**Social Security Number**          **Date of Birth (mm/dd/yy)**

**Driver's License Number**

**Step 2 - Enter Investigation Details**
Please provide details on why items on your credit report may be inaccurate. Use additional space on the back of the page if necessary.

Nicor Gas
**Company Name:**                    **Company Name:**
▆▆▆▆▆▆
**Account #:**                       **Account #:**

This information is inaccurate because:
- ☒ This is not my account
- ☐ I have never paid late
- ☐ This account is in bankruptcy
- ☐ This account is closed
- ☐ I have paid this account in full
- ☐ I paid this before it went to collection or before it was charged off
- ☒ Other: _Never used or_
Authorized gas billed in
this account

This information is inaccurate because:
- ☐ This is not my account
- ☐ I have never paid late
- ☐ This account is in bankruptcy
- ☐ This account is closed
- ☐ I have paid this account in full
- ☐ I paid this before it went to collection or before it was charged off
- ☐ Other: _____

TransUnion

**Request for Investigation**

| Company Name: | Company Name: |
|---|---|
| Account #: | Account #: |

**This information is inaccurate because:**
- ☐ This is not my account
- ☐ I have never paid late
- ☐ This account is in bankruptcy
- ☐ This account is closed
- ☐ I have paid this account in full
- ☐ I paid this before it went to collection or before it was charged off
- ☐ Other: _____

**This information is inaccurate because:**
- ☐ This is not my account
- ☐ I have never paid late
- ☐ This account is in bankruptcy
- ☐ This account is closed
- ☐ I have paid this account in full
- ☐ I paid this before it went to collection or before it was charged off
- ☐ Other: _____

**Step 3 - Enter Previous Address/Employer Corrections and Additional Comments (Optional)**
Please use this space for corrections to your previous address information, corrections to your previous employer information and for additional comments.

Signature: _Aubrey D. Jocko_

**Step 4 - Return this form to:**
TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19022-2000

Trans**Union**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
Transunion LLC ☐ Addressee

B. Received by (Printed Name)  JUN 19 2007   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Transunion Consumer Solutions
PO Box 2000
Chester, PA
                    19022-2000

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0001 1158 1704

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

08CV1653
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

# EXHIBIT

# I

# Tamari & Blumenthal, LLC

## ATTORNEYS AT LAW

55 W. Monroe Street
Suite 2370
Chicago, Illinois 60603
USA

Phone: (312) 236-6200
Fax: (312) 577-1593

November 28, 2007

TransUnion
PO Box 1000
Chester, PA 19022

Dear Trans Union Representative:

Our law firm represents Mr. Aubrey Locke. Mr. Locke's address is 18075 Whitman Ln, Lansing, IL 60438. Mr. Locke's social security number is ▓▓▓▓▓▓▓▓

There is a problem with information in Mr. Locke's credit report.

Specifically, the **Nicor Gas Account** ▓▓▓▓▓▓▓ listed on Mr. Locke's credit report should not be listed as his account, should not be listed as derogatory and is not Mr. Locke's responsibility.

First, please find attached correspondence from Nicor dated August 3, 2004 advising that the gas service has been turned off per Mr. Locke's request. Despite this notice, Mr. Locke subsequently received invoices from Nicor for a responsibility that is not his. The property located at 1425 Schilling Ave. was rented to a tenant from on our about July, 2004 and it was the tenant who had the responsibility to pay the Nicor gas bill (please see attached apartment lease and Nicor Gas invoice for the same property).

Mr. Locke has advised that he did not have possession of the property until about March 15, 2007 (please see attached court order). Therefore, Mr. Locke should not responsible for Nicor Gas invoices with respect to the above mentioned time periods.

Please delete any and all listings of a delinquent account with Nicor on Mr. Locke's credit report. We also expect Nicor to stop any further attempts to try to collect on this account.

If you have any questions, please do not hesitate to let us know.

Very truly Yours,

Tamari & Blumenthal, LLC
By:

cc: Nicor Gas

# nicor

## 1 888 NICOR 4U

(6 4 2 - 6 7 4 8)

Nicor Gas
PO Box 0000
Aurora IL 00000 0000
00 00 000 0000 00

---

PAMELA J LOCKE AUBREY D LOCKE

Account:

Meter Number 2868349

Residential-Space Heat

(Page 2 of 2)

**Before digging on your property, call JULIE at 1 800 892-0123. JULIE notifies Nicor Gas and other utilities so we can mark the location of underground facilities.**

As you requested, your gas service has been turned off. We appreciate the opportunity to have provided you with natural gas service and look forward to serving you again in the future. Just a reminder that if you or your family request service for this address within the next 12 months, you will be billed a Monthly Customer Charge for the time your service was off plus a reconnection charge.

Nicor Services Company is increasing your charge for Gas Line ComfortGuard coverage to $3.95 per month. This change will take effect beginning with the October 2004 gas bill. For information call 1-888-864-4141

**Total Amount Due**

Date of Issue August 3, 2004

$55.64



Exhibit 1

# APARTMENT LEASE
### HEATED, NOT FURNISHED

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT | SECURITY DEPOSIT* |
|---|---|---|---|---|
| Aug 1, 2005 | BEGINNING | ENDING | $900 | $1800 — |
| | August 1, 2005 | July 31, 2006 | | |

*IF NONE, WRITE "NONE." Paragraph 2 of Lease Agreements and Covenants then INAPPLICABLE.

| | | | |
|---|---|---|---|
| TENANT | Phyllis Powder | OWNER | Aubrey D. Locke |
| APARTMENT | 1425 Schilling Ave | | 18075 Whitman Lane |
| BUILDING | Chicago Hts, IL 60411 | | Lansing, IL 60438 |

In consideration of the mutual agreements and covenants set forth below (the same being fully included as part of this Lease) OWNER hereby leases to TENANT and TENANT hereby leases from OWNER for a private dwelling the Apartment described above, together with the fixtures and accessories belonging therein, for the above Term. All parties listed above as OWNER and TENANT are herein referred to individually and collectively as OWNER and TENANT respectively.

### ADDITIONAL AGREEMENTS AND COVENANTS (if any)

Tenant pays all utilities, Landlord pays taxes & insurance

| TENANT(S) | | SIGNATURES | | OWNER(S) |
|---|---|---|---|---|
| Phyllis Powder | (SEAL) | | Aubrey D. Locke | (SEAL) |
| | (SEAL) | | | (SEAL) |

## LEASE AGREEMENTS AND COVENANTS

**RENT**  1. TENANT shall on the first day of each month pay to OWNER or OWNER'S Agent (if Lease executed by agent) in advance the rent set forth above at the address set forth above (or such other address as OWNER may designate in writing). The time of each and every payment of rent is of the essence of the Lease.

**SECURITY DEPOSIT**  2. TENANT has deposited with OWNER the security deposit set forth above for the performance of each and every covenant and agreement of this Lease. OWNER shall have the right, but not the obligation, to apply the security deposit in whole or in part in payment of any unpaid rent or other amount due because of an unperformed covenant or agreement by TENANT. OWNER'S right in possession of the premises for nonpayment of rent or for any other reason shall not be affected by the fact that OWNER holds security. TENANT'S liability is not limited to the amount of the security deposit. On termination of the Lease and full payment of all amounts due and the performance of all TENANT'S covenants and agreements (including surrender of Apartment in accordance with paragraph 13), the security deposit or any portion thereof remaining unapplied shall be returned without interest to TENANT.

**FALSE APPLICATION**  3. The application for this Lease and all representations and premises contained therein are hereby made a part of this Lease. TENANT warrants that the information given by TENANT in the application is true. If such information is false, OWNER may at OWNER'S option terminate this Lease.

**CONDITION OF APARTMENT, UPKEEP**  4. TENANT has examined the Apartment and acknowledges that, except for the work OWNER has agreed to do in the application or otherwise in writing, TENANT is satisfied with the present physical condition of the Apartment and that neither OWNER nor OWNER'S agent has made any representations or promises concerning the physical condition of the Apartment except those specifically set forth in this Lease. Upon reasonable notice from TENANT, OWNER shall keep in repair the following property (except if repair is necessitated by TENANT'S negligence or willful acts): (a) if furnished by OWNER, the refrigerator, stove, air conditioning units and dishwasher; (b) the plumbing and electrical pipes, wiring and related facilities and (c) the floor, interior and exterior walls, supports, ceiling and roof. The failure to keep any of the foregoing in repair shall not affect the obligation of TENANT to pay rent, and TENANT'S sole remedy therefor shall be recovery of damages from OWNER. In the event any repair or replacement is necessitated by negligence or willful act of TENANT, TENANT shall on demand reimburse OWNER for the cost thereof. TENANT shall comply with all responsibilities imposed on tenant by the applicable Municipal Code and other regulations. TENANT shall not suffer or commit any waste on and about the Apartment or the Building and shall at TENANT'S expense keep the Apartment in good order and repair (except to the extent OWNER has in this Lease agreed to make repairs). On termination of the Lease TENANT shall return the Apartment to OWNER in the condition, reasonable wear excepted, if TENANT fails to keep the Apartment in such condition and repair, OWNER or OWNER'S agent may enter and do the Apartment in good condition and repair. On demand TENANT shall pay OWNER the cost of such work.

**USE OF APARTMENT**  5. The Apartment shall be occupied solely for residence purposes by TENANT, those other persons listed in the application for this Lease, and any children which may be born to or legally adopted by TENANT during the Term. Neither TENANT nor any of these persons shall perform or permit any practice that may damage the reputation of or otherwise be injurious to the Building or the neighborhood, or be disturbing to other tenants or increase the rate of insurance on the Building.

**ASSIGNMENT, SUBLETTING, ABANDONMENT, SUBLETTING, TERMINATION RIGHT OF POSSESSION, RE-ENTRY**  6. TENANT shall neither sublet the Apartment or any part thereof nor assign this Lease nor permit by any act or default of himself or any person any transfer of TENANT'S interest by operation of law, nor after the Apartment or any part thereof for lease or sublease without, in each case, the written consent of OWNER. If TENANT vacates or abandons the Apartment, ten (10) days non-occupation being deemed an abandonment, or breaches any covenant or agreement in this Lease, TENANT'S right to possession of the Apartment shall immediately terminate. The mere retention of possession thereafter by TENANT shall constitute a forcible detainer and if OWNER so elects, but not otherwise, this Lease shall thereupon terminate, but this Lease shall automatically terminate without need of an election by OWNER on any transfer of TENANT'S interest by operation of law such as TENANT'S bankruptcy or insolvency. In any such event the Apartment or any part of it may be rent by OWNER for such rent and such terms and such gain as OWNER may elect without release by TENANT from any liability under this Lease. On such termination TENANT shall surrender possession of the Apartment immediately and OWNER or OWNER'S agent shall have full and free license, with or without process of law, to enter and take possession of the Apartment and expel and remove TENANT or any other person who may be occupying the Apartment and to repossess himself of the Apartment as of his former estate. Such entry by OWNER or OWNER'S agent shall not constitute trespass or forcible entry and detainer and shall not cause a forfeiture of rents due by virtue thereof nor a waiver of TENANT'S covenants or agreements in this Lease. OWNER may for any reason reject any prospective new tenant offered by TENANT or by others. OWNER may for other remedies in the Building first before reletting or attempting to relet the Apartment. TENANT shall on demand pay all deficiencies if the rent on reletting is not sufficient to satisfy the rent provided in this Lease and in addition shall pay all expenses of reletting, including disbursing, repairs, replacements and brokerage commissions of rules recommended by the Chicago Real Estate Board.

**ALTERATIONS, ADDITIONS, FIXTURES, APPLIANCES**  7. TENANT shall make no alterations or additions nor install nor maintain in the Apartment or any part of the Building, interior or exterior, major appliances or devices of any kind without in each case the written consent of OWNER and on the terms and conditions specified in such written consent. All alterations, additions and fixtures (including locks and bolts) shall remain as part of the Apartment unless OWNER otherwise elects.

**ACCESS**  8. OWNER, OWNER'S agent and any other person authorized by the same shall at any time have the right of free access during the Term to inspect, repair, alter or exhibit the Apartment, and at any time within ninety (90) days prior to the end of the Term to exhibit the Apartment for rent and to affix "For Rent" signs in such places as OWNER or OWNER'S agent shall determine, all without interference of any kind and regardless of consent by TENANT or others. TENANT shall pay OWNER one (1) month's rent as liquidated damages for such interference with the rights set forth in this paragraph.

Exhibit 1

**HEATING AND WATER**

9. OWNER shall furnish to and for the use of TENANT, in fixtures provided for such purpose by OWNER and no other fixtures, hot and cold water during the Term and, in radiators or other heating fixtures in the Apartment, a reasonable amount of heat at reasonable hours from September 15 to June 1, as required by the applicable Municipal Code, except when prevented by causes beyond the control or prevention of OWNER, or except during the repair of the apparatus provided in the Building for the furnishing of water and heat.

**FIRE AND CASUALTY**

10. If the Apartment becomes untenantable by reason of fire, explosion or other casualty, OWNER may at his option terminate this Lease or repair the Apartment within one hundred twenty (120) days. If OWNER does not repair the Apartment, within this time, or if the Building is wholly destroyed, the Term hereby created shall cease and determine. If OWNER elects to repair the Apartment, the rent shall be abated and prorated from the date of the fire, explosion or other casualty to the date of reoccupancy, provided that during repairs TENANT has vacated the Apartment and removed TENANT'S possession if required by OWNER. The date of reoccupancy shall be the date of notice to TENANT that the Apartment is ready for occupancy.

**EMINENT DOMAIN**

11. If the whole or any substantial part of the Building is taken or condemned by any competent authority for any public use or purpose, the Term of this Lease shall end upon, and not before, the date when possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. Current rent shall be apportioned as of the date of such termination.

**SURRENDER OF APARTMENT**

12. At the termination of this Lease by lapse of time or otherwise, TENANT shall yield up immediate possession to OWNER and deliver all keys to OWNER or OWNER'S agent at the place where rent is payable. If TENANT fails so to do, TENANT shall for each day TENANT continues to occupy the Apartment pay as liquidated damages a sum equal to the monthly rent provided for in this Lease divided by five (5).

**WAIVERS BY TENANT**

13. (a) TENANT'S obligation to pay rent during the Term or any extension thereof or any holdover tenancy shall not be waived, released or terminated, nor shall the right and power to confess judgment pursuant to paragraph 17 hereof be waived or terminated by the service of any five-day notice, demand for possession, notice of termination of tenancy, institution of any action of forcible detainer, ejectment or for any judgment for possession, or any other act or acts resulting in termination of TENANT'S right of possession.

(b) The payment or receipt of rent due shall not waive or affect any such notice, demand, suit or judgment or in any manner waive, affect, change, modify or alter OWNER'S rights or remedies.

(c) The acceptance of liquidated damages pursuant to paragraph 12 shall not be a waiver by OWNER of the right of re-entry, nor shall any other act in the apparent affirmance of the tenancy at the termination of this Lease operate as a waiver of the right to terminate this Lease or operate as an extension thereof, nor shall the provisions of paragraph 12 affect OWNER'S right, at his election, to treat TENANT as a holdover tenant under the terms of this Lease.

(d) TENANT hereby waives any and all notices, elections, demands and terminations by or from OWNER whether or not provided for by Illinois statute, except only if waiver is specifically prohibited by statute

(e) The acceptance by OWNER of rent after it falls due or after knowledge of any breach of this Lease by TENANT, or the giving of any notice or making of any demand or any other act or waiver by OWNER other than a specific written waiver or election, shall not be construed as a waiver of any rights of OWNER under this Lease or as an election not to proceed under provisions of this Lease.

(f) OWNER'S rights and remedies under this Lease are cumulative. The use of one or more thereof shall not exclude or waive any other right or remedy.

(g) Except only as otherwise specifically provided by Illinois statute, neither OWNER nor OWNER'S agents shall be liable for damages to TENANT or to any persons claiming through TENANT (nor shall rent be abated) for damage to or loss of property wherever located from any cause whatever.

(h) TENANT'S rights under this Lease and any extensions thereof shall be and are subordinated at all times to any present or future mortgages on the real estate (or any part of it) on which the Building is situated and to all advances upon the security of such mortgages. TENANT shall execute any further instruments required by OWNER to effect such subordination and hereby irrevocably appoints OWNER (and, if more than one person's name appears as OWNER, any one of them) as attorney-in-fact to execute and deliver such instruments in TENANT'S name.

**LEGAL EXPENSES**

14. TENANT shall pay OWNER all OWNER'S costs, expenses and attorney's fees in and about the enforcement of covenants and agreements of this Lease.

**RULES AND REGULATIONS**

15. The rules and regulations at the end of this Lease shall be a part of this Lease. TENANT covenants and agrees to keep and observe these rules and regulations. TENANT also covenants and agrees to keep and observe such further reasonable rules and regulations as may later be required by OWNER or OWNER'S agent for the necessary, proper and orderly care of the Building.

**BINDING ON HEIRS, ETC.**

16. All covenants and agreements on this Lease shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and assigns of OWNER and TENANT, subject to the restrictions set forth in paragraph 6 hereof.

**CONFESSION OF JUDGMENT**

17. TENANT (and if more than one person's name appears as TENANT, each of them jointly and severally) irrevocably authorizes any attorney of any court of record in any State of the United States from time to time to appear for TENANT (and each of them) in such court, to waive process, service and trial by jury, to confess judgment in favor of OWNER, OWNER'S heirs, executors, administrators, successors or assigns and against TENANT (and each of them) for any rent and interest due hereunder from TENANT to OWNER and for OWNER'S costs and reasonable attorney's fees, to waive and release all errors in such proceedings and all right of appeal and to consent to an immediate execution upon the judgment.

## RULES AND REGULATIONS

These rules are for the mutual benefit of all tenants. Please cooperate. Violations may cause termination of your Lease.

1. No animals without written consent of OWNER or OWNER'S agent (which may be revoked any time). No animals without leash in any public area of the Building.
2. Passages, public halls, stairways, landings, elevators and elevator vestibules shall not be obstructed or be used for children's play or for any other purpose than for ingress to and egress from the Building or apartments, nor shall children be permitted to congregate or play in or around the Building. All personal possessions must be kept in the Apartment or in basement lockers if provided.
3. All furniture, supplies, goods, packages of every kind shall be delivered through the rear or service entrance, stairway or elevator.
4. Carriages, velocipedes, bicycles, sleds or the like shall not be allowed in the lobbies, public halls, passageways, courts or elevators of the Building but are to be stored only in places designated for their storage by the OWNER or OWNER'S agent.
5. Laundry and drying apparatus shall be used in such a manner and at such times as the OWNER or the OWNER'S agent may direct. Washers and dryers cannot be kept in the Apartment.
6. The use of garbage receptacles or incinerators shall be in accordance with posted signs and only garbage and refuse wrapped in small, tight parcels may be placed in garbage receptacles or incinerator hoppers. Aerosol cans or inflammable materials shall not be placed in garbage receptacles or dropped into the incinerator.
7. No sign, signal, illumination, advertisement, notice or any other lettering or equipment shall be exhibited, inscribed, painted, affixed or exposed on or at any window or on any part of the outside or inside of the Apartment or the Building without the prior written consent of the OWNER or OWNER'S agent.
8. No awnings or other projections including air conditioners, television or radio antennas or wiring shall be attached to or extended from the outside walls of the Building.
9. The TENANT shall not alter any lock or install a new lock or a knocker or other attachment on any door of the Apartment without the written consent of the OWNER or the OWNER'S agent.
10. No waste receptacles, supplies, footwear, umbrellas or other articles shall be placed in the halls, on the staircase landings, nor shall anything be hung or shaken from the windows or balconies or placed upon the outside window sills.
11. No noise, music or other sounds shall be permitted at any time in such manner as to disturb or annoy other occupants of the Building.
12. Running extension cord wiring for electrical appliances or fixtures in violation of the Municipal Code is prohibited.
13. The water closets, basins and other plumbing fixtures shall not be used for any purpose other than for those for which they were designed; no sweepings, rubbish, rags or any other improper articles shall be thrown into them. Any damage resulting from misuse of such facilities shall be paid for by the TENANT.
14. No spikes, hooks or nails shall be driven into the walls or woodwork of the Apartment without first obtaining the written consent of the OWNER or the OWNER'S agent.
15. There shall be no cooking or baking done in or about the Apartment except in the kitchen. Cooking on a barbecue or other similar equipment on a porch or balcony is expressly forbidden.

### ASSIGNMENT BY OWNER

On this ______________________ 19____ for value received, OWNER hereby transfers, assigns and sets over to ______________ ______________________ all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to ______________________ 19____

______________________(SEAL)

______________________(SEAL)

### GUARANTEE

On this ______________________ 19____ in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by TENANT, TENANT'S heirs, executors, administrators, successors or assigns of all covenants and agreements of the above Lease.

______________________(SEAL)

______________________(SEAL)

NOTE: Use Form Number 12-1B for assignment by TENANT.

OCT 19 2007 23:20 FROM:SOUTH HOLLAND MORT 708 339 2500 TO:13128932266 P.43/45



www.nicorgas.com/myaccount

1 888 NICOR 4U    1 888 642-6748

## Energy Profile

Service for:
Lester Turner

Account

**Average Daily Cost**
2006 $1.00
2005 $13.98

**Average Daily Therms**
2006 0.96
2005 10.17

**Total Degree Days**
2006 1,263
2005 1,137

**Monthly Therm Usage:**

295.2
196.8
98.4
0.0

■ This Month
■ Last Month
□ This Month Last Year

Visit the "My Account" section of nicorgas.com where you can conveniently:
- Pay your bill
- Sign up for email reminders, Auto Payment and Budget Plan
- Make payment arrangements
- Submit a meter read
- View your gas use history

### Payment Information
Previous Balance ............................... 2,144.73
**Total Payments and Balances** .......................... $2,144.73

**Corrections**
10/03 Corrected Billing ...................... -83.61 ...... $83.61cr

**General Adjustments**
12/04 Deposit Interest ...................... .16 ...... $.16cr

For gas service at the following location:
1425 Schilling Ave, Chicago Heights

### Meter Reading Meter Number 2868349
Current: 1793 Actual Final Reading - October 5, 2006
Previous: 1704 Actual Reading - September 1, 2006
Difference: 89 (34 days)
Conversion-to-Therms: 89 X 1.013 BTU Factor = 90.15 Therms

### Residential Gas Heat Service

**Delivery Charges**
Monthly Customer Charge ...................... 27.73
First 20 Therms   42.67 @ $0.1557 ...................... 9.76
21 - 50 Therms   27.48 @ $0.0663 ...................... 1.82
Environmental Cost Recovery 28.77 @ $0.0029 ▼ ...... .08
Environmental Cost Recovery 61.38 @ $0.0041 ~ ...... .75    $39.64

**Natural Gas Cost**
28.77 Therms x $0.59 ...................... 16.97
29.73 Therms x $0.44 ...................... 13.08
28.77 Therms x $0.55 ...................... 15.82
2.88 Therms x $0.67 ...................... 1.93    $47.80

**Taxes**
Municipal Utility Tax $87.44 @ 5.15% ...................... 4.50
Utility Fund Tax $87.44 @ 0.1% ...................... .09
State Revenue Tax 90.15 @ $0.024 ~ ...................... 2.16    $6.75

**Total Current Bill Amount** ...................... $94.19

**Total Amount Due** ...................... $2,155.15

Bill Date 12/05/2006, due by 12/27/2006

*Exhibit 10*

---



Please detach and return with your payment

Past due balance is $2051.12 due now.
Current bill $10.42 due by 12/27/2006

| Total Amount Due |
| --- |
| **$2,155.15** |

Lester Turner

Indicate amount added for Sharing:

$ _____

Account

PO BOX 416
AURORA IL 60568-0001

45 34 33 4124 9 0002155158 0002155158 9

Order for Possession                                CCM-N114-15M-2/28/05 (43480658)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT / ___6th___ DISTRICT          *Exhibit 2*

Aubrey D. Locke
                              Plaintiff(s)          No. 06 M6 6809
          v.

Phyllis Pointer & Any & All
                              Defendant(s)
      Occupants

          AGREED          ORDER FOR POSSESSION

This cause coming on to be heard upon the complaint of the Plaintiff(s), _Aubrey D Locke_

_____, and the issues thereof having been heard and

determined by __the Court__ and said __Court__ having found that the
              (court) (jury)              (court) (jury)

Plaintiff(s) __Aubrey D Locke__ is/are entitled to the possession of
the premises described herein.

IT IS THEREFORE ORDERED AND ADJUDGED:

1. That the Plaintiff(s) have and recover of and from the Defendant(s), _Phyllis Pointer_

_Any & All Occupants_, the possession of the following described premises:

   Name: _Phyllis Pointer & Any & All Occupants_

   Address: _1425 Schilling Ave_

   Floor - Apt No. _____

   City - State - Zip: _Chicago Heights Il 60411_

2. That the Plaintiff(s) have and recover of and from the Defendant(s), _Phyllis Pointer_

the sum of _POSSESSION ONLY - plus cost_ dollars and costs.
                                                      279.80

3. Enforcement of this judgment is stayed until _INSTANTER_ (date)

I hereby certify the above to be correct.

Dated: _____
          (Seal of Clerk of Circuit Court)

This order is the command of the Circuit Court and
violation thereof is subject to the penalty of law.

Clerk of the Circuit Court of Cook County, Illinois

Atty. No.: _52094_

Atty. Name: _Ronald D Bailey_

Atty. for Plaintiff (or) Pro Se Plaintiff:
_Plaintiff_

Address: _12757 S Wallace_

City/State/Zip: _Blue Island, Il 60406_

Telephone: _(708) 353-7783_

ENTERED
JUDGE FRANK CASTIGLIONE-1675
MAR 15 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

_____        _____
Judge                  Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COPY 2 - FILE WITH SHERIFF'S OFFICE

# EXHIBIT

# J

# NCO™

NCO Financial Systems, Inc.

507 Prudential Road
Horsham, PA 19044
1-866-305-9426
Office Hours: 8:00 a.m. - 9:00 p.m. Monday through Thursday,
8:00 a.m. - 5:00 p.m. Friday. 8:00 a.m. - 12:00 noon Saturday

October 2, 2007

Aubrey D. Locke
18075 Whitman Lane
Lansing, IL 60438

Re:  Our Reference No(s).           Creditor(s)
     ▌▌▌▌▌▌▌)                       Nicor Gas 1844
                                     Ferry Road. Naperville, IL 60563
                                     Account No.: ▌▌▌▌▌▌▌

Dear Aubrey D. Locke:

Thank you for your inquiry regarding the above-referenced account. Please be advised that the above-referenced account is closed in our office. Further inquiry regarding the underlying debt may be directed to Nicor Gas.

According to our files, we have not reported the above-referenced account to a credit bureau. Please be advised that NCO Financial Systems, Inc. cannot effect a change to how any other company or entity may have listed the account on your credit profile.

We appreciate the opportunity to respond to your inquiry.

Very truly yours,

Jamall Hutchinson
Incoming Data Management

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

Calls to or from NCO Financial Systems, Inc. may be monitored or recorded for quality assurance.